IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Criminal No. 08-90 |
| TODD SEWELL | ) | |
| | ) | |
| | ) | |

## MEMORANDUM ORDER

Before this Court is Defendant's Motion to Suppress Evidence as to Count III of the indictment filed against him at Criminal No. 08-90. Defendant, Todd Sewell, is charged in the indictment at Count One with possession with intent to distribute 6.03 grams of crack cocaine; at Count Two with distribution and possession with intent to distribute .08 grams of crack cocaine; and at Count Three with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). On September 17, 2008, Defendant filed the instant Motion to Suppress Evidence as to Count Three. We conducted a suppression hearing and heard oral argument on November 18, 2008. Defendant argues that the police acted without a warrant, probable cause or reasonable suspicion to stop the Defendant and conduct a search of his person in violation of the Fourth Amendment of the United States Constitution. As such, Defendant argues that the firearm seized as a result of the allegedly illegal search is "fruit of the poisonous tree" and must be suppressed. For the reasons that follow, Defendant's motion is hereby **DENIED**.

I.  Factual Findings

Officer Joyce McClelland is a patrol officer for the Pittsburgh police. She has worked

in that capacity for twenty years. On the evening of December 24, 2006, Officer McClelland was assigned to patrol Zone 2, which includes the Uptown and Hill District neighborhoods in Pittsburgh. At that time, Officer McClelland was in full uniform and was patrolling in a marked car. At the same time that she was patrolling Zone 2, Officers Churilla and Zigarella, also Pittsburgh police officers, were in the area of Reed St. and Roberts St. in the Hill District, responding to a call unrelated to the instant matter. They were in uniform at the time.

Shortly after midnight on December 25, 2006, Officers Churilla and Zigarella heard roughly six gunshots coming from the area of the 200 block of Dinwiddie St.[1] They returned to separate marked vehicles parked on Reed St. Officer Churilla broadcast over the radio that he had heard gunshots in the area of Dinwiddie St.[2] At the time she heard the call, Officer McClelland was driving on 5th Ave. toward downtown Pittsburgh. At this time, Defendant was traveling down Dinwiddie St. toward 5th Ave. after leaving a bar in that area. Defendant testified that he had "about" seven beers and that he was "high" but not drunk. He too heard the gunshots 'below" him in the 200 block of Dinwiddie St. Defendant also testified that he traveled in the direction of the gunshots and

---

[1] Dinwiddie St. intersects 5th Ave. at the 100 block of Dinwiddie and the 1800 block of 5th Ave. See Defendant's Exh. 1.

[2] Officer Churilla testified that, subsequent to returning to his vehicle and broadcasting the information regarding the shots fired on the radio he spoke to an unidentified witness and obtained a description of the individual who had allegedly fired the shots in question. Officer Churilla could not recall whether he broadcast that information over the radio. Furthermore, Officer McClelland testified, and the government concedes, that she did not have that information at the time of the stop and frisk. As such, any information pertaining to the witness' statement is irrelevant to the inquiry here, namely whether the stop of Defendant was reasonable. See U.S. v. Goodrich, 450 F.3d 552, 559 (3d Cir. 2006) ("'[R]easonable suspicion' is measured before the search; information acquired subsequent to the initial seizure cannot retroactively justify a Terry stop.") (citing Florida v. J.L., 529 U.S. 266, 271 (2000)).

2

proceeded toward 5th Ave. He said that he spotted the gun on the street and picked it up, intending to give it to a police officer- friend of his who moonlighted as a bouncer at a local bar. We do not find this testimony to be credible. Subsequent to hearing the radio broadcast of the information related to the shots fired on Dinwiddie St., and as she approached the intersection of Dinwiddie St. and 5th Ave., Officer McClelland observed Defendant approach 5th Ave. from Dinwiddie St. Defendant proceeded to cross 5th Ave. in front of Officer McClelland's car. According to Officer McClelland, Defendant "ran" across 5th Ave. Defendant admits that he "jogged" across 5th Ave. in front of Officer McClelland's marked car. After Defendant crossed over 5th Ave., he slowed to a walk and looked at McClelland's patrol car. At this point, Defendant put his hands in his front coat pockets and continued to walk down 5th Ave. in the same direction that McClelland was traveling. According to Officer McClelland's testimony, Defendant appeared nervous. Specifically, Defendant put his hands in his pocket and looked at her patrol car nervously. The Uptown area of the city is a high crime area. In particular, the area historically has high incidence of crimes involving drug and firearm offenses.

Officer McClelland proceeded to pass Defendant in her patrol car and come to a stop. She exited her vehicle and withdrew her firearm from its holster. She proceeded to approach Defendant and ordered him to put his hands in the air. Defendant complied. She then ordered Defendant to place his hands on the chain link fence adjacent to the sidewalk where he was standing. Defendant also complied with this request. Officer McClelland then conducted a pat- down of Defendant, during which she felt a firearm in Defendant's coat pocket. Thereafter Officers Churilla and Zigarella arrived to assist, handcuffed Defendant and seized a Smith and Wesson nine millimeter pistol; this is the subject of Defendant's felon in possession charge. Defendant made no statements

3

in connection with the search or subsequent arrest.

II. Discussion

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S.C.A. Const. Amend. 4. Evidence obtained through a search that violates a defendant's Fourth Amendment rights will be suppressed. U.S.C.A. Const. Amend. 4; see also Segura v. U.S., 468 U.S. 796, 804 (1984) (noting that "evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion"). When a search and seizure is done without a warrant, it is the government's burden to show that the search was reasonable. U.S.C.A. Const. Amend. 4; see U.S. v. Austin, 269 F.Supp. 2d 629, 631 (E.D. Pa. 2003) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) (quotations omitted)).

While the Fourth Amendment generally requires probable cause before the police may conduct a warrantless arrest, an investigatory stop of an individual may be justified by less than probable cause. U.S. v. Brown, 159 F.3d 147, 149 (3d Cir. 1998) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968); quoting U.S. v. Roberson, 90 F.3d 75, 77 (3d Cir. 1996) (quotations omitted)). Furthermore, in Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court held that a warrantless search and seizure, based on less than probable cause, is permissible under the Fourth Amendment. Specifically, the Court held that "where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that persons with whom he is dealing may be armed and presently dangerous" the police officer may conduct a limited search of the individual's person in order to discover weapons that may pose a threat to the officer. Terry, 392 U.S. at 30; see also U.S. v. Yamba, 506 F.3d 251, 255 (3d Cir. 2007); Adams v. Williams, 407 U.S. 143, 14 (1972) (noting, "a brief stop of a suspicious individual, in order to

4

determine the identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time") (citations omitted)).

Under Terry, an officer may not conduct a stop simply because criminal activity is afoot. U.S. v. Brown, 159, F.3d 147, 149 (3d Cir. 1998); see also Terry, 392 U.S. at 29. Rather, "the officer must have a particularized and objective basis for believing that the particular person is suspected of criminal activity." Id.; see also United States v. Cortez, 449 U.S. 411, 417-18 (1981). Deference is given to the officer's conclusions based on his or her experience. Id.; see also United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984) (citing Cortez, 449 U.S. at 418). Moreover:

> in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry, 392 U.S. at 27 (citing Beck v. State of Ohio, 379, U.S. 89, 91 (1964)); see also Adams v. Williams, 407 U.S. 143, 145 (1972) ("The Fourth Amendment does not require a policeman who lacks ... probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an immediate response"). In evaluating the reasonableness of a stop and frisk, the Court will look at the totality of the circumstances. U.S. v. Valentine, 232 F.3d 350, 353 (citing U.S. v. Sokolow, 490 U.S. 1, 8 (1989) (citations omitted). An officer's "experience and specialized training may allow them to make inferences and deductions from information that might well elude an untrained person." Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotations omitted)).

A limited protective search of an individual during an investigatory detention may

5

be conducted to find concealed weapons with less than probable cause when the officer is justified in believing that the individual may be dangerous to the officer or to others. Terry, 392 U.S. at 24; see also Adams, 407 U.S. at 146. As such, when the officer justifiably believes that the individual "whose suspicious behavior he is investigating at close range is armed and presently dangerous," the officer may conduct a pat down of the individual to determine whether the individual is carrying a weapon. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (quoting Terry, 392 U.S. at 24; Adams, 407 U.S. at 146). The pat down is limited in scope to what is necessary to determine whether the individual is armed. Id. at 373. If the search goes beyond that, it is invalid under Terry and the fruits of that search will be suppressed. Id. at 373 (citing Sibron v. New York, 392 U.S. 40, 65-66 (1968)).

"A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." U.S. v. Ubiles, 224 F.3d 213, 217 (3d Cir. 2000) (citing Wardlow, 528 U.S. at 125). In evaluating whether a Terry stop was reasonable under the totality of the circumstances, there are several pertinent factors. Specifically, "'nervous, evasive behavior is a pertinent factor in determining reasonable suspicion'" U.S. v. Nelson, 284 F.3d 472, 477 (3d Cir. 2002) (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Likewise, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Id. (quoting Wardlow, 528 U.S. at 124). The late time of day, "especially when considered alongside [an] area's reputation for criminal activity" may add to the reasonableness of a stop. U.S. v. Goodrich, 450 F.3d 552, 561 (3d Cir. 2006) (citations omitted). Furthermore, in U.S. v. Goodrich, the Court held that the proximity of the stop, both temporally and geographically, to the scene of a crime "is another important factor mitigating

6

strongly in favor of the validity of the stop." Id. at 562 (citing e.g. U.S. v. Brown, 334 F.3d 1161, 1165 (D.C. Cir. 2003) (finding reasonable suspicion where the defendant's car was parked in a high crime area, at a late hour and in close proximity to the area where gun shots were heard)). See also United States v. Moore, 817 F.2d 1105 (4th Cir. 1987).

Here, several factors present an objective basis on which Officer McClelland, a twenty-year veteran of the police force, would have had reasonable suspicion to perform the stop and frisk of Defendant: (1) she had received information that gunshots had been fired in the 200 block area of Dinwiddie St., a high crime area; (2) moments later she observed Defendant proceeding from that same area to 5th Ave. in close proximity both in time and location to the sound of the shots; and (3) the late hour on Christmas Eve or Christmas morning. See U.S. v. Goodrich, 450 F.3d 552, 563 (2006). Moreover, Officer McClelland described Defendant's behavior as nervous and evasive when he looked at her vehicle. Specifically, she found the fact that Defendant went from a run or jog to a walk and the fact that he put his hands in his pocket suspicious in consideration of all of the events occurring at the time in question. Furthermore, Officer McClelland testified that she believed Defendant would be armed and dangerous. We agree that, considering the totality of the circumstances, Officer McClelland had valid reason to stop Defendant and perform a protective search to determine whether he was armed.

III. Conclusion

Because we find that there was reasonable suspicion to perform a stop and frisk of Defendant's person, the gun seized as a result of said search will not be suppressed. Defendant's motion is therefore DENIED.

Dec. 11, 2008
Date

Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Counsel of record