IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Crim. No. 08-90 |
| | ) | |
| | ) | |
| TODD SEWELL | ) | |

## CLARIFICATION

Defendant Todd Sewell has filed a motion in which he alleges that there is erroneous information contained in his Presentence Investigation Report that is adversely affecting his custody classification and his opportunity for rehabilitation. (Doc. 85). Specifically, Mr. Sewell complains that there was no evidence to support the assertion that he fired a firearm. Mr. Sewell is correct; however, our review of the relevant documents shows that there is no error in the Presentence Investigation Report, rather the information that appears is scattered and thus unclear. Accordingly, we will treat Mr. Sewell's motion as a motion for clarification.

The relevant factual information is contained in the Presentence Report under the Offense Conduct section at paragraph 11, and states in relevant part as follows:

> As to Count 3 of the indictment, on December 24, 2006, officers were clearing a call in the Hill District section of Pittsburgh when they heard about six shots fired coming from the 200 block of Dinwiddie Street. The officers were approached by an unknown black female who indicated that there was an unknown black male shooting a gun at the corner of Dinwiddie Street and Colwell Street. The unknown male ran down Dinwiddie Street toward Fifth Avenue. The female gave the description of a black male wearing a black jacket, blue jeans, and a dark colored tossil cap. The defendant, Todd Sewell, was observed running out of Dinwiddie Street and was approached by an officer. **The defendant matched the description of the individual who was firing the shots.**

(Presentence Investigation Report, at ¶ 11 (emphasis added).)

1

In this regard, during the plea colloquy in this case, Mr. Sewell's counsel explained how the evidence produced at Mr. Sewell's suppression hearing showed that the Officer who actually stopped and arrested Mr. Sewell was not acting on any description:

> the police who heard the shot fired put out a call first and that Officer McClelland down on Fifth Avenue pulled over and stopped Mr. Sewell without getting any description or broadcast over the airwaves, and that she made the Terry stop that led to the search and the seizure of the gun. The other officers came on the scene afterwards. So, the nuance about a broadcast of the description, what we heard through the evidence at the hearing was that the police later interviewed said there was no broadcast of the person that was put out there for Officer McClelland to rely on as a factual basis for the Terry stop that she did. So that's the only addition or correction, . . . .

(Plea Colloquy, April 6, 2009, at 27-28 (Doc. 73).) The Assistant United States Attorney did not disagree with this assessment. In addition, the transcript of the suppression hearing demonstrates that the arresting Officer was never given a description of the person who had fired shots, but instead only knew that "shots were fired." (*See* Transcript of Suppression Hearing, November 19, 2008, at 7, 20, 39.) Specifically, the following exchange verifying that the arresting officer did not have a description of the person who fired shots occurred:

> Q. . . . . when Officer McClelland is responding to your first call, she's responding to the call of shots being fired and not to the call or second call about this woman is giving a description, correct?
> A. Yes.
> Q. Okay. So this description business did not enter into the mindset of Officer McClelland as she made the stop?
> A. No.

(Id. At 39.) This issue was important to clarify in deciding the suppression motion because if the Officer did not have a description of the person who had fired shots before the stop was made then it would not be a part of our analysis. Indeed, we noted this in our Opinion. After stating that "Officer Churilla broadcast over the radio that he had heard gunshots in the area of Dinwiddie" we explained as follows:

2

> Officer Churilla testified that, subsequent to returning to his vehicle and broadcasting the information regarding the shots fired on the radio he spoke to an unidentified witness and obtained a description of the individual who had allegedly fired the shots in question. Officer Churilla could not recall whether he broadcast that information over the radio. Furthermore, Officer McClelland testified, and the government concedes, that she did not have that information at the time of the stop and frisk. As such, any information pertaining to the witness' statement is irrelevant to the inquiry here, namely whether the stop of Defendant was reasonable.

(Memorandum Order, December 11, 2008, at 2 n.2 (Doc. 38).)

In response to the erroneous information contained in the Presentence Investigation Report at Paragraph 11, Mr. Sewell's counsel filed an Objection stating as follows:

> The errors in this narrative were shown during the suppression hearing. Foremost among them is that the arresting officer stopped Todd Sewell on Fifth Avenue upon hearing a call over the radio reporting the sound of shots being fired on Dinwiddie. The factual basis for the stop, and ensuing search and arrest of Todd Sewell does not include the description by an unknown black female, and there is no evidence tending to prove that Todd Sewell fired the shots, or that the gun in his possession fired the shots. In that regard, see ¶ C.2 of the plea agreement in which the parties stipulate that this firearm was not used or possessed in connection with another felony offense.

(Defendant's Position with Respect to Sentencing Factors, July 13, 2009, at 4 (Doc. 68).) In the Addendum to the Presentence Report, the Probation Officer stated that "[b]ased upon the plea agreement in this case, the probation officer would concede that it appears there is no evidence tending to prove the that defendant fired shots or that the shots were fired from the gun he had in his possession in this case." (Addendum to the Presentence Report, July 15, 2009, at 2.)

As the Addendum to the Presentence Report is a part of the Presentence Report it should have been sufficient to show that there is no evidence to support the allegation in Paragraph 11 that the "defendant matched the description of the individual who was firing the shots." As such, this statement is considered to be "corrected" by the Addendum, but perhaps it should have been excised from the document.

3

We issue this clarification because of the abundance of evidence that supports the conclusion that there is no evidence to show that Mr. Sewell fired the shots reported in Paragraph 11. At the suppression hearing we heard testimony from the Officer who heard the shots (Officer Churilla) and from the Officer who stopped Mr. Sewell (Officer McClelland). Their testimony was consistent that there was no evidence that Mr. Sewell fired the shots. We further note that there was no evidence at the suppression hearing that the firearm found on Mr. Sewell appeared to have recently been fired, nor was there any forensic testimony regarding whether the firearm had been fired. Moreover, even the Assistant United States Attorney conceded that he had no information that the firearm found on Mr. Sewell was used or possessed in connection with a felony offense other than the fact that Mr. Sewell was prohibited from possessing the firearm.

We will issue this clarification to emphasize that there is no factual evidence to support the statement that Mr. Sewell matched the description of the person firing shots, and state that there is no evidence to show that Mr. Sewell actually fired any shots or that any shots were fired from the firearm he possessed.

We realize that it is within the discretion of the Bureau of Prisons to make prisoner classifications in accordance with the Bureau's procedures and in consideration of safety concerns as well as other concerns. The "duty to classify and segregate federal prisoners in penal and correctional institutions, as set forth in 18 U.S.C. § 4081, is within the discretion of the BOP." Sake v. Sherman, 2007 WL 2254529, *6 (W.D.Pa. 2007) (citing Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir.1983) (it is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status). We make no comment on the actual classification made by the Bureau of Prisons or on

any future classification. If Mr. Sewell wishes to challenge his classification he must follow the administrative process within the prison. Our only intention here is to ensure that the Bureau of Prisons has accurate information.

Accordingly, the following Clarification is hereby entered.

AND NOW, to-wit, this ___9th___ day of February, 2011, the Court hereby grant's Defendant's motion for clarification as follows:

The statement in Paragraph 11 of the Presentence Investigation Report that

*"The defendant matched the description of the individual who was firing the shots."*

is not supported by any factual evidence in the record. When paragraph 11 is read in conjunction with the Addendum to the Presentence Report, as it should be, it should be clear that "there is no evidence tending to prove the that defendant fired shots or that the shots were fired from the gun he had in his possession in this case."

Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Todd Sewell, 09917-068
FCI Allenwood
P.O. Box 1000
White Deer, PA  178867

Counsel of record

U.S. Probation Office

Bureau of Prisons